## In the Matter of the Estate of ALICE M. CORDIER, Deceased.

Surrogate's Court, New York County, June 4, 1938.

*Cullen & Dykman* [*Lyman Sessen* of counsel], for the petitioner.

*Delatour, Kennedy & Miller* [*Harold M. Kennedy* of counsel], for Auguste J. Cordier, legatee, respondent.

*Cornelius J. Smyth*, special guardian.

FOLEY, S. This is a proceeding brought by the corporate executor of the estate of the testatrix for the construction of her will. The testatrix executed her will on December 30, 1936. She died on June 12, 1937. She left two children, a son, Auguste J. Cordier, and a daughter, Alice C. MacGuire. She disposed of her entire estate as follows: She bequeathed her tangible personal property in equal shares to her two children. She bequeathed to each of them the sum of $10,000 outright and to one Mary Rooney the sum of $5,000. By article IX, subdivision (A) she devised and bequeathed one-fourth of the residue of her estate absolutely to her son, Auguste J. Cordier. By subdivision (B) of that article she devised and bequeathed another one-fourth of the residue, in trust, for the benefit of her son for life, with remainder after his death to his children upon certain contingencies. The other one-half of the residue she devised and bequeathed, in trust, for the benefit of her daughter, Alice C. MacGuire, for life, with remainder after her death to her children, also upon certain contingencies. She named her son and the Brooklyn Trust Company as executors and trustees of her estate.

At the time of the death of the testatrix there was found in her safe-deposit box a promissory note made by her son, A. J. Cordier, the coexecutor, to her order, due òn demand, with interest payable semi-annually at the rate of five per cent. The note was dated May 6, 1925, and was in the principal sum of $49,000. Two installments

of interest were paid thereon, one on May 10, 1926, and the other on November 8, 1926, each in the sum of $1,225. It is conceded that there were no further payments made, either of principal or interest, nor any written acknowledgment or admission by Auguste J. Cordier of the indebtedness evidenced by the note.

Article IV of the will provides: " I direct that the amount of any indebtedness due me from either of my children at the date of my death shall be deducted, in the case of my son, from the bequest made to him in Article IX, paragraph (A), hereof; and in the case of my daughter, from the principal of the trust created in Article IX, paragraph (C) hereof; and in the event either or both predecease me any such indebtedness shall be deducted equally from the principals of trusts created and bequests made in Article IX, paragraphs (B) and /or (C), respectively hereof."

No indebtedness is claimed to be due from the daughter of testatrix.

Simply stated, the question presented for determination is: May the legacies or shares of the estate given to the son, Auguste J. Cordier, under the will be retained, either in whole or in part, in satisfaction of the indebtedness upon the note of May 6, 1925?

Auguste J. Cordier contends that the Statute of Limitations is a complete bar to any recovery upon the note. He relies for his contention upon the decision in *Kimball* v. *Scribner* (174 App. Div. 845). It was there held that there can be no offset of a legacy against a debt barred by the statute. Until the determination in that case, there appeared to be no doubt that a legacy to a beneficiary could be applied by the executor of an estate to the payment of a debt due from the beneficiary to the decedent, even though the Statute of Limitations had run against the debt. (*Rogers* v. *Murdock*, 45 Hun, 30; *Matter of Leslie*, 3 Redf. 280; *Leask* v. *Hoagland*, 64 Misc. 156; *Matter of Timerson*, 39 id. 675; *Matter of Foster*, 15 id. 175.) These earlier cases were based on the doctrine of equitable lien and the right to retain the legacy in satisfaction of the debt. *Kimball* v. *Scribner* (*supra*) appears to be contrary to this general equitable theory. Nevertheless, it is the present law of this State. (*Matter of Flint*, 120 Misc. 230; *Matter of Farrell*, 121 id. 536; *Matter of Hahn*, 163 id. 70.)

There is a clear distinction, however, between the case of *Kimball* v. *Scribner* and the present situation. In the *Kimball* case the will did not direct a deduction of the indebtedness of the legatee from any share or interest in the estate bequeathed to him. Here there is a specific direction contained in article IV of the will that " the amount of any indebtedness due me from either of my children shall be deducted " from the respective shares therein designated. The

rule in the *Kimball* case, therefore, is not applicable to prevent the executors from retaining sufficient moneys to discharge the obligation of the son out of the share of the residue given to him outright. It is a bar, however, to the retention by the executors, in satisfaction of the debt, of any other assets bequeathed to the legatee. Only the one-fourth of the residue absolutely bequeathed was charged, under the terms of the will, with the payment of the debt.

It is further contended by the son that the "indebtedness," which the testatrix intended "shall be deducted," was an indebtedness legally due and collectible at her death and one not barred by the Statute of Limitations. This contention is without merit. It has been definitely held that the Statute of Limitations is one of repose only and does not discharge the debt. (*Hulbert* v. *Clark*, 128 N. Y. 295.) In the case just cited, EARL, J., said as follows: "The Statute of Limitations does not after the prescribed period destroy, discharge or pay the debt, but it simply bars a remedy thereon. The debt and the obligation to pay the same remain, and the arbitrary bar of the statute alone stands in the way of the creditor seeking to compel payment. The Legislature could repeal the Statute of Limitations and then the payment of a debt upon which the right of action was barred at the time of repeal, could be enforced by action, and the constitutional rights of the debtor are not invaded by such legislation. It was so held in *Campbell* v. *Holt* (115 U. S. 620). It was so held in *Johnson* v. *Albany & Susquehanna R. R. Co.* (54 N. Y. 416), that the Statute of Limitations acts only upon the remedy; that it does not impair the obligation of a contract or pay a debt or produce a presumption of payment, but that it is merely a statutory bar to a recovery; and so it was held in *Quantock* v. *England* (5 Burr. 2628), and so it has ever since been held in the English courts."

While there appears to be no case where the precise question here involved was passed upon in any forum in this State, in other jurisdictions it seems to have been uniformly held that where the testator himself directs that a debt due or owing to him from a legatee shall be brought into the division of his estate or be deducted from the share of the one so indebted, the debt must be deducted, though barred by the Statute of Limitations. (See collection of cases and notes in 1 A. L. R. 1009; 30 id. 776; 110 id. 1386.)

In the case of *Matter of Gillingham* (220 Penn. St. 353; 69 A. 809) the facts were almost identical with those involved here. There the testator directed "that all indebtedness which at the time of my decease may be due to me by my brother * * * shall be charged only against the share of income of my said brother

in my residuary estate." The contentions advanced by the debtor-legatee in that estate were similar to those asserted by the son of the testatrix here. The court there said:

" It is argued that because the testator expressly directed such indebtedness which at the time of his decease might be due by the brother to be deducted from his share, it must be assumed in law that only the indebtedness that is demandable and collectible by process of law can be deducted. A debt may be due, that is justly and honestly owing, and yet the creditor be without remedy to enforce payment because of the plea of the Statute of Limitations. Still the debt is due, it is owing. The word ' due ' is used by judges, legislators and lexicographers as synonymous with ' owing.' (*Fulweiler* v. *Hughes*, 17 Pa. 440.) ' Due ' means ' owed,' ' owing.' (Century Dictionary.) It is defined, ' owed, owing, owing and unpaid, remaining unpaid, an indebtedness.' (14 Cyc. 1107.) To the testator the word ' due ' had doubtless the same meaning as owing. The indebtedness referred to by him was what his brother owed him, what remained unpaid at the time of his death. As was said in *Keiser* v. *Keiser* (199 Pa. 77), so here the testator has in his will indicated his intention as to the indebtedness in question, and by positive direction indicated his wishes in this respect. He has, in plain words, required not its collection, but its deduction from the share of his brother."

Moreover, there is ample evidence in the will that the testatrix did not intend to forgive any indebtedness due her from either of her two children despite the provisions of the Statute of Limitations. The will of the testatrix discloses a plan of disposition which plainly contemplates an equal division of the major portion of her estate between her two children. It was clearly in furtherance of that plan of parity of distribution between them that she directed the deduction prescribed in article IV of her will to be made. In the use of the words, " the amount of any indebtedness due me," their ordinary meaning must be attributed to the testatrix. Undoubtedly, she intended moneys which had been loaned by her and had not been repaid. Only by the return of such moneys to the estate for distribution in accordance with the terms of her will can her demonstrated impartiality towards her two children be effectuated.

I accordingly hold as follows: (1) The Statute of Limitations is not a bar to the deduction of the amount due upon the note out of the one-fourth share of the residue bequeathed to Auguste J. Cordier outright. It is a bar to payment from any other benefit passing to him under the will. (2) In accordance with the express instructions of the testatrix, the amount due upon the note must be

deducted from the one-fourth share of the residue bequeathed outright to her son and must be retained by the executors as assets applicable to payment of the note.   (3) In the determination of the values of the respective shares disposed of under the residuary clause there must first be added to the present residue of the estate the amount of the indebtedness due from testatrix's son.   The aggregate sum is then divisible into four equal parts and allocated as required by the will.   From the one-fourth part to which Auguste J. Cordier is entitled may then be deducted the amount due upon the note.

The surrogate in his determination has also considered the arguments of Auguste J. Cordier with respect to his indebtedness to the Brooklyn Trust Company, the coexecutor here, as bearing upon the intention of the testatrix not to charge his indebtedness to her upon the note against any of the benefits given to him under the will.   Prior to her death he had executed demand notes to the order of the Brooklyn Trust Company, approximating $43,000.   The testatrix guaranteed payment of such notes at maturity.   She pledged as collateral for such payment her own securities in the sum of $134,834.01, substantially her entire estate.   But at the time of her death no defaults upon the notes to the Brooklyn Trust Company had occurred.   The only indebtedness then due to the testatrix was upon the note to her of May 6, 1925.   To hold that she contemplated an indebtedness arising out of prospective defaults upon the notes to the Brooklyn Trust Company would be mere conjecture as to the operation of her mind and would do violence to the specific directions contained in her will.

The claims of the corporate executor, the Brooklyn Trust Company, upon the guaranty of payment made by the decedent of the notes of Auguste J. Cordier, upon which liability accrued after her death, and its claim also for $5,000 for moneys owed by the decedent to it, are personal claims and must be proven before the surrogate pursuant to section 212 of the Surrogate's Court Act.   The hearing upon these claims has been set for the 17th day of June, 1938, at ten-thirty A. M.   At the same time the liability of the son of the testatrix for reimbursement to the estate for payment of such claims will likewise be passed upon by the surrogate.

Serve notice of hearing and file same with the clerk of this court on or before June 15, 1938.

Proceed accordingly.