In the Matter of the Estate of CORNELIA J. SAWIN, Deceased.

Surrogate's Court, Westchester County, February 9, 1940.

*Ellery E. Albee*, for John N. Heeney and Frances E. Heeney, as executors, etc., petitioners.

*Rubin & Rubin*, for Harry B. Sawin, objectant.

*Joseph F. Gagliardi*, special guardian.

MILLARD, S.   In this accounting proceeding objections have been interposed by Harry B. Sawin, a son, and the special guardian.

The decedent died August 20, 1936, leaving a last will and testament which was duly probated in this office on October 20, 1936. The assets consist of a parcel of real property, improved with a one-family house at Hartsdale, N. Y.; a bond and mortgage in the amount of $4,000; mortgage certificates and miscellaneous common and preferred stock.

For the sake of brevity and clarity each of the objections of Harry B. Sawin will be treated separately and are disposed of as follows:

1. Petitioners have filed an explanatory affidavit relative to the matters raised by this objection. It is represented in this affidavit and stands unrefuted that, as of the date of death, there was a first mortgage against the Hartsdale property in the sum of $6,080, on account of which, prior to her death, decedent paid the sum of $165.56, and a second mortgage of $494.72. No proof has been produced as to any payment made on account of the second mortgage and consequently it must be assumed that no such payment has been made. Accordingly, I hold that, as of the date of decedent's death on August 20, 1936, the Hartsdale property was subject to a first mortgage in the amount of $5,913.44 and a second mortgage of $494.72. The somewhat contradictory figures and computations in my former decision construing the will (*Matter of Sawin*, N. Y. L. J. Feb. 26, 1938, p. 988) were based upon erroneous information stated in the petition. In so far as these figures are in conflict with those in my said former decision, it and the decree made thereon are amended accordingly. (Surr. Ct. Act, § 40.) Pursuant to the provisions of paragraph "Third" of the will, petitioners will be directed to liquidate the securities therein described and apply the proceeds thereof in satisfying the aforementioned incumbrances, together with accrued interest thereon computed to the date of death, to the extent and in the manner provided in my decision of February 15, 1938.

2. This objection has been withdrawn and the accountants charged with an additional sum of $100 representing income from the Hartsdale property.

3 and 4. These objections are dismissed for lack of proof. The accountants will be directed, however, to sell the articles of personal property referred to in the objections.

5. A portion of this objection has been cured by the information contained in the explanatory affidavit. As to the other phase of the objection, with respect to the alleged failure of the accountants to satisfy the incumbrances against the Hartsdale property, the account shows that they have sold one of the mortgage certificates and applied the proceeds toward the payment of the incumbrances in question. Apparently counsel for objectant is laboring under a misapprehension as to availability of the general assets for the satisfaction of these incumbrances. As it is clearly stated in paragraph "Third" of the will and in my decision of February 15, 1938, the accounting executors are restricted to the mortgages and mortgage certificates owned by decedent as a source of payment of these incumbrances. It appears that the mortgage in the sum of $4,000 has been foreclosed and that the executors now hold the real

property. As I have heretofore stated, the executors have sold one mortgage certificate and there is no proof that they have failed to exercise proper diligence in attempting to effect a sale of the other mortgage certificates. The court will take judicial notice of the lack of a ready market for these certificates. In any event, the income from these securities has, to some extent, offset the interest which the executors have been paying since the date of death on the mortgage incumbrances. This objection is, therefore, dismissed.

6. This objection refers to the failure of the executors to pay the taxes against the Hartsdale property within the time prescribed by law and thereby charging the estate with unnecessary penalties. In this connection counsel for objectant apparently is again proceeding on the erroneous theory that the general assets of the estate were available for the payment of charges against the Hartsdale property. As stated in my decision of February 15, 1938, the effect of the provisions of paragraph " Third " of the will was to vest the legal title to this property in the lawful issue of objectant, Harry B. Sawin, subject to his life estate and a life estate in his wife, Helen Sawin, during the period she remains unmarried after his death. The objectant had a legal right to occupy the premises and in that event the will directed that he pay all taxes, assessments and other carrying charges. If he chose to live elsewhere and enjoy the income from the property, it would also follow that the charges aforementioned must be paid out of such income. The inadequacy of income together with inability to convert into cash the securities designated in paragraph " Third " of the will to discharge the incumbrances, is a sufficient answer to this objection and, accordingly, it is dismissed.

7. The matters raised by this objection have been treated and disposed of under objection No. 1.

8. This objection has been withdrawn upon filing of the aforementioned supplemental affidavit.

9. This objection presents a very interesting legal question for which no precedent in this State has been brought to my attention and independent research has failed to find any direct authority. It was stipulated on the hearing that, prior to her death and on November 8, 1935, the decedent obtained a money judgment against the objectant, her son Harry B. Sawin, in the sum of $327.20 and that said judgment was duly docketed in the office of the clerk of this county on November 12, 1935. It is important to note, at the expense of repetition, that decedent died August 20, 1936, and that her will was probated and letters testamentary issued on October 20, 1936. Thereafter, and on November 25, 1936, the judgment debtor was duly adjudicated a bankrupt in the United

States District Court for the Southern District of New York and discharged on May 31, 1939. It further appears the bankrupt listed in his schedules as an asset his interest under the will and that objections to his discharge interposed by the accounting executors were dismissed. Thereafter, and by an order of the Supreme Court of this county dated September 14, 1939, the judgment in question was discharged of record. On this state of facts the question presented for determination is whether income due, or to become due the objectant Harry B. Sawin, as life tenant of the real property and beneficiary under a trust, can be applied by the executors and trustees to the payment of the judgment.

The conceded and agreed facts show that as of the date of death and probate of her will, the judgment in question was valid and an asset of the estate. Under ordinary circumstances it is well settled in this State that an executor has the right to set off a debt from a legatee in determining the net sum payable to the latter. (*Matter of Cramer*, 166 Misc. 713, and cases cited.) Does the adjudication and discharge in bankruptcy under the facts of this case defeat the application of this rule? In the absence of any binding authority, I am of the opinion and hold that it does not. The respective rights of the estate on the one hand to enforce and collect the judgment as an asset and of the beneficiary to receive his income, were fixed and determined as of the date the will was probated and letters issued. No subsequent acts of either party can change or alter these rights. This principle of equitable setoff or right of retainer was commented upon by Chancellor WALWORTH in *Smith* v. *Kearney* (2 Barb. Ch. 533, 547): " The right of the executor or administrator to retain the whole, or a part, of a legacy or distributive share, in discharge or satisfaction of a debt due from the legatee or distributee to the estate, is not only consistent with the soundest principles of equity, but is perfectly well settled. Thus, in the case of *Jeff* v. *Wood* (2 P. Wms. Rep. 128), which came before Sir JOSEPH JEKYLL in 1723, he decided that the executor was entitled to retain a legacy, as against the assignees in bankruptcy of the legatee, in satisfaction of a debt due from the legatee to the estate of the testator. In *Sims* v. *Doughty* (5 Ves. 243), Lord ALVANLY allowed a retainer by the surviving executor, as against the representatives of a deceased executor who was a legatee, but who had wasted a part of the estate."

This principle of equitable retainer has also been applied in cases similar to the instant one where the debtor is a beneficiary of a trust fund. (*Matter of Cramer, supra; Matter of Foster*, 38 Misc. 347; *Leggett* v. *Leggett*, 24 Hun, 333.)

In *Matter of Cramer* (*supra*) Surrogate FOLEY stated that there appears to be a conflict in the authorities as to the enforcement of this right of retainer against the income of a trust. After reviewing

the authorities, it was held that the executor is entitled to retain the trust income under such circumstances. This same principle has also been applied in *Matter of James* (149 Misc. 135) and *Matter of Flint* (120 id. 230; affd., 206 App. Div. 778).

· In *Matter of Flint* (*supra*) my learned predecessor, Surrogate SLATER, expressed his views with respect to the application of the rule as follows (at p. 231): " There is a distinct difference between a setoff between living parties and between the representative of a decedent's estate, and a distributee thereunder, and different principles govern. The legatees have paid no value for the right. It would not exist without a statute. That the legatee or heir should fulfill his obligations to the estate before receiving the bounty is clear, just and equitable, and the court should enforce it. The principle that the distributee is not entitled to his distributive share while he retains in his own hand a fund out of which that and other legacies or shares ought to be paid governs the instant case."

It has also been held that the Statute of Limitations is not available to a legatee as a means of preventing the application of this equitable right of retainer. (*Rogers* v. *Murdock*, 45 Hun, 30; *Matter of Bogart*, 28 id. 466, and cases cited.)

" The right of retainer and lien is equitable in its nature, is independent of statute and is distinct from the technical right by setoff in actions at law." (*Matter of Flint, supra*, 231.) Consequently, the decision in *Kimball* v. *Scribner* (174 App. Div. 845), cited by counsel for objectant, is not applicable.

Accordingly, I hold that the executors and trustees have a right to apply the income due or to become due to Harry B. Sawin to the payment and satisfaction of his indebtedness to the estate. It would be inequitable and unfair to other interested parties to permit the beneficiary to enjoy the benefits conferred upon him by this will and at the same time escape the payment of his indebtedness to the estate.

The objection raised by the special guardian as to the failure of the executors to sell other securities is also dismissed. The will gives the executors the right " to retain any of my property in the same form of investment in which it may be at the time of my decease, with full power and authority to invest or reinvest in securities, stocks, bonds or other investments, which, in their judgment, are safe, any law to the contrary notwithstanding, my preferences being first mortgages on real property guaranteed as to principal and interest."

All other objections not specifically referred to and disposed of are dismissed.

Settle decree.