In the Matter of the Will of EMMA K. HART, Deceased.

Surrogate's Court, Monroe County, September 17, 1945.

*Edward T. Malone* for executrix, petitioner.

*W. P. Smith* for B. E. Worden, respondent.

*V. M. Candiello* for certain legatees, respondents.

*E. K. Van Allen* and *R. J. Lee* for George S. Price, respondent.

FEELY, S. The court is now asked to determine whether testatrix intended by the use of the word " children " to include children's children; and also whether or not she meant a barred debt of a legatee to her should be deducted from her legacy to him.

1. The will was drawn and witnessed by a lawyer whose practice was largely in probate law. Seven years before her death on April 20, 1943, testatrix, who was then beyond middle age, chose as the objects of her bounty eight persons of middle age, of whom only two were among the group of her nearest blood relatives. Those relatives in all numbered nine persons, comprising a nephew, three nieces, a grandnephew and four grandnieces. Her will first gave six sevenths of her estate to six persons who were not of her kin, and whose relationship is not described in the will. They are the heirs of her deceased husband, from whose family she had received the bulk of her estate. The remaining one seventh she bequeathed to two of her nearest blood relatives, without describing in the will their relationship to her. With the apparent object of forestalling intestacy and of preserving equality among the family group who were to receive six sevenths of her estate, testatrix provided that those of the group of six who outlived her should take equally; but if any of this group died in her lifetime, leaving " children surviving them ", then the share intended for " such deceased person " should "go to their children ". This is expressed in the will as follows: " six sevenths of all the rest, residue and remainder to * * * [six named persons, including Alice M. Allen], or to so many of them as may be living at the time of my death, share and share alike; and should any of them predecease me and leave children them surviving, it is my will and I direct that the distributive share or shares going to said deceased person or persons shall go to their children." One of those six legatees, Alice M. Allen, died on May 11, 1941, in the lifetime of testatrix, leaving a daughter, and the child of another daughter who had died seven years before the date of the will. The first question is whether this grandchild of the legatee takes half the seventh, or whether his aunt takes the whole

seventh, that was intended for Alice M. Allen. If the word " children " be read strictly and literally this grandchild would be disinherited; but if a per stirpes division was intended by testatrix he would be entitled to one fourteenth of the residuary estate. Counsel agree that the word " children " ordinarily means offspring in the first degree; but its meaning in an individual case is governed by the intention of the testatrix as it may fairly be gathered from the will as a whole and the circumstances in which it was written. The main object of the testatrix was to return to her deceased husband's relatives the bulk of her estate because she had received it from his family. The legacies to those six named relatives of his whom she made her residuary legatees were not protected by the statute from lapse on predecease. The will not only used the word " children " in the plural and generically; but it also directs the share intended for such deceased " person ", who is not described as a " parent ", shall go to " their children ". Some significance attaches also to the description of the share as a " distributive " one, which would be a proper description if the testatrix had died intestate. In the circumstances, these features indicate testatrix probably meant there should be a " family ", or per stirpes division of the bulk of her estate among this preferred group; and in the context quoted above she used the word " children " in the broad sense of " descendants " or " heirs ". It does not appear that when testatrix was making her will she knew that Alice M. Allen's daughter, Emma J. Worden Morrison, had died seven years before, leaving a son, Berton E. Worden; nor does it appear that testatrix heard after the will was made that Alice M. Allen had recently thereafter died. My conclusion is that testatrix meant the seventh of the residue intended for Alice M. Allen should be divided among her descendants; and that one half thereof should now be paid to her daughter, Almeda E. Johnson, and the other half to her grandson, Berton E. Worden.

2. One of the residuary legatees of testatrix, named Frank K. Price, was the maker of a note to her order for $377, payable on November 18, 1930, one year after its date, with interest. This note was found in her possession at the time of her death, without any indorsements of payments thereon, for none were ever made. The second question is whether the executor can withhold from the legacy the amount of this note. For present purposes it is assumed that the payee's right of action at law could have been barred, at the option of the maker, after November 18, 1936. Meantime and on November 6, 1936, testatrix made

her last will giving in general terms the bulk of her estate to six named persons, among whom was the maker of the note. The will is silent as to the note, and as to any deductions to be made on account of any indebtedness of any legatee to testatrix. This state of things remained unchanged until the death of testatrix on April 20, 1943. " In the absence of anything to show affirmatively that the testator intended to surrender or extinguish the debt, the obligation of the legatee is to be considered as existing and continuing in full force and effect." (Davids' New York Law of Wills, § 798.) The intention of testator is controlling in any case, if it can be found; and the matter being often one of fact, the variance in the cases may be due to differences in the facts. In *Leask* v. *Hoagland* (136 App Div. 658, revg. 64 Misc. 156) the evidence was found not only insufficient to sustain a claimed offset, but also enough to make it likely testator was not indebted to the legatee. The dates there were such that the Statute of Limitations could not have been pleaded. However, in some of the cases where the statute could have been set up, the discussion seems to imply that all such questions can be disposed of as a matter of law. Only debts that could be barred are presently pertinent, and insofar as the formal expression of intention goes, these cases fall into the following groups: (1) Where the will directs the deduction of any debt or indebtedness (*Matter of Cordier,* 168 Misc. 577, 579), or of a specified debt from a named legatee (*Matter of Haase,* 174 Misc. 42, 43) or where the direction is made clearer by the addition of the words " whether   *   *   * barred   *   *   *   or not " (*Matter of Robert Van Tassell,* 119 Misc. 478, 480) ; (2) Where there is not any such direction, but the intention to deduct, or not, can be inferred from other words, or the circumstances; (3) Where there is not any evidence whatever of any intention. In these last two groups practically all the difference of opinion is to be found. In the second group belongs the decision in *Kimball* v. *Scribner* in the Second Department in 1916 (174 App. Div. 845) where testatrix at the date of her will in 1914, less than two months before her death, still held in her possession notes for $30,000, dated in 1895, on which nothing had ever been paid, and on which her brother was one of three makers jointly and severally bound. In her last will she bequeathed to this " beloved brother   *   *   *   absolutely the sum of $20,000". This word " absolutely " was enough here, by itself, to show she meant this legacy should be free from any abatement or condition; but the court disposed of the appeal apparently as a matter of law. On the facts alone,

the court was justified in denying the executors' right to use the notes either as an offset to an action against the executor for the legacy or otherwise. The decision was justified also for the technical reason that the legatee brought an action at law for his legacy against the payee's executor, and the latter, probably to obtain the protection of an adjudication, set up the notes as a defense and by way of setoff, despite the declaration of our Statute of Limitations (Civ. Prac. Act, § 61, *Otto* v. *Lincoln Sav. Bank of Brooklyn,* 294 N. Y. 798) that " A cause of action other than for the recovery of real property, upon which an action cannot be maintained as prescribed in this article, cannot be effectually interposed as a defense or counterclaim." The court sustained the plaintiff's reply that the notes were barred. By interposing unnecessarily the notes as an offset the executors participated in an " action " and sought judgment. The appellate court did not advert to the fact that there was not then before it a proceeding coming up from Surrogate's Court; but the court did make a statement that has since occasioned some doubts in surrogate practice when it said, because the executor's answer apparently identified their equitable right of retainer in a surrogate proceeding with their alleged right to a counterclaim or offset in an action at law, that " there can be no longer any sound distinction in legal principle whether this question [of the Statute of Limitations] arises in a Surrogate's Court in a proceeding to distribute an estate, or in an action at law to recover a legacy."

This statement in the opinion was made the sole basis of a decision in *Matter of Mary V. Farrell* (121 Misc. 536, 538) where the Surrogate added that " The courts of other States have long followed the same rule." Since then some of the text writers have suggested there are differences between our procedure and that of the five other States mentioned in the foregoing decisions; and the editors of the annotated cases state that the majority of the rulings at large sustain the right to retain a barred or discharged debt in the liquidation of estates in surrogate or equity practice (see Note, 1 A. L. R. 991; Note, 30 A. L. R. 775; Note, 1918C L. R. A. 619). The facts in the *Farrell* case (*supra*) were that testatrix held a note for $25,000, made in 1902, by a person who was appointed as one of the named executors of her will. This maker never paid anything but the interest for the first six months, when it was due; but nothing more during the ensuing twenty years of the payee's life; nor did he make any new promise. At common law, and up until 1830 only, such a legacy would have been

deemed in New York an extinguishment of the debt as a matter of law. On the facts, the long delay of twenty years suggests abandonment, or laches.

The doubt that the statement quoted from the opinion in the *Kimball* case (*supra*) is binding in surrogate practice has been increased by two later decisions which can be justified on principles similar to those that have ever sustained the right of retainer. One is *Matter of Sawin* (173 Misc. 428, 432). And the other is *Matter of Cramer* (166 Misc. 713). In the *Sawin* case (*supra*) the debt that Surrogate MILLARD properly allowed to be retained was one that had been discharged in bankruptcy. Those principles are that in actions at law for debt, the Statute of Limitations is designed merely to shut the doors of the court in the face of stale demands, and thus bar the remedy, without, however, destroying the obligation; and that the remedy by action may be lost by delay, with the practical by-product in some cases that the party in possession thereby equivalently attains status as if he were a true owner; yet under both statutes, that of limitations and that of bankruptcy, the creditor's right to be paid remains unimpaired to the extent that he still can obtain payment as best he legally may, otherwise than by an action at law, or a special proceeding, as, e.g. where he has a lien (*Hulbert et al.* v. *Clark et al.,* 128 N. Y. 295), such as a vendor's lien, which is purely equitable (17 R. C. L., Limitation of Actions, § 313, n. 18); or where he has a pledge (*House* v. *Carr,* 185 N. Y. 453, 457; *Clay* v. *Freeman,* 118 U. S. 97); or where he has received from the debtor a written acknowledgment of the debt and a promise to pay it;, for the courts have recognized the so-called moral obligation that is still outstanding after action on the debt has been barred or discharged, as still being a " consideration " sufficient to support the new promise, notwithstanding the case is not strictly one of an adequate *quid pro quo.*

On this basis the ancient equitable rule of offset in the distribution of decedents' estates was justified by emphasizing the equity of making one who was to be the recipient of a mere gratuity of gift, first discharge his moral obligation to pay the debt he owed to his testator or ancestor, for otherwise he would be giving himself a preference by withholding an asset. In such case the decedent's representative withholds from the money the debtor never earned, enough to satisfy the latter's moral obligation, as testator is presumed to have thought, in giving the legacy, that the debtor would do. Quite different is the case where the decedent's representative by an execu-

tion of a money judgment seeks out of the debtor's own property enough to satisfy the debt. The fact that the debtor, if he chooses so to do, may bar the levy on his property.by pleading the claim is outlawed, especially if he chooses to reject the proffered legacy, is not a good reason for saying decedent's representative may not have the equity remedies, other than by action, judgment and execution. It seems to quite overdraw the premises to conclude the Statute of Limitations renders the debt absolutely " unenforceable " in any and all circumstances whatsoever. It is clear in many types of cases that equity liens survive the bar. " The general principle that a lien may continue to be effective after the statute of limitations has barred the right of recovery on the debt is not confined in its application to cases of vendors' liens, and the right to maintain an action to enforce the implied promise of a devisee of real estate to pay an annuity which a will has made a lien on the real estate, may be barred, although the lien against the real estate may still be enforced." (17 R. C. L., Limitation of Actions, § 313.) Where, however, the lien itself had been adjudicated to have been already barred, the rule would not apply (*Matter of City of New York* [*Hamilton Ave. Widening*], 177 Misc. 1005).

As to whether our general Statute of Limitations must now be read as overriding all equitable liens in surrogate and equity practice, our highest court has not yet spoken. In *Matter of Chamberlin* (289 N. Y. 456) the legatee's notes to testatrix were 'made after she had made her last will; and her declarations to third persons were held ineffectual that she did not want the notes paid, and had directed they be destroyed before her estate was settled.

The other decision above mentioned as raising doubt as to the effect in surrogate practice of the statement made in the *Kimball* v. *Scribner* case (174 App. Div. 845, *supra*) is *Matter of Cramer* (166 Misc. 713), in which Surrogate FOLEY reaffirms the traditional rule in Surrogates' Courts that even the otherwise unleviable income of an express testamentary trust is available for application to the beneficiary's debt to the testator, unless the will expressly declares the income is not to be liable for the debts of the income beneficiary. In many cases in this line, and in the *Sawin* case (173 Misc. 428, *supra*), the dates were such as to render inapplicable the Statute of Limitations.

As to the second group of cases, therefore, it is clear that the decision itself in *Kimball* v. *Scribner* (*supra*) was correct,

either from the point of view of an actual intention there be no abatement; or because our statute forbids the use of a barrable debt as an offset or counterclaim in an action at law to recover a legacy; but there seems to be ground to doubt the statement quoted from the opinion was intended to be a definite ruling that no longer should there be recognized in surrogate practice, as distinct from an action at law, the traditional right of the estate to retain a barred debt, or a discharged debt, from a legacy, or intestate share, going to the debtor at judicial settlement. Apparently the only decision rendered there was that the debt that could be barred could not be used as a counterclaim or offset in an action at law to recover a legacy.

As to the third group of cases, those where there is no evidence of intention to deduct or not, either in the will alone, or when considered in its factual setting, apparently the basis for decision is to be found more in legal presumptions and principles of law. This may account for the apparent attitude of some that any question of retainer may be decided as a matter of law. The general rule is that there must be affirmative evidence that testator intended to forgive the debt when he signed his last will. The legacy to the debtor, in and of itself, does not extinguish the debt. The presumption is that the testator meant both the legacy and the debt be paid. Up until 1916, when the opinion in the case of *Kimball* v. *Scribner* (*supra*) was published, the fact that the debt could be barred at the date of the will was not deemed either in surrogate practice, or in an action in equity for an accounting, to extinguish the right of retainer, except possibly where there was laches, or the number of the years was so great that, as an item of evidence, it might, with other facts, go to show an intention to abandon the debt.

The situation in the third group is practically similar to that which arises in intestate distribution, where the heir is indebted to the ancestor, and is in position to bring an action at law against the administrator for his distributive share, without fear of his own barred debt to the ancestor being successfully used therein as a counterclaim. The representative of an estate in such an action need not set up a barrable debt, even where the heir's action is laid in Justice Court or in some other court working under section 140 of the Justice Court Act, which makes a counterclaim compulsory; and under section 142 of the same Act declaring what counterclaim the estate may set up; but the estate's representative still has the right in equity or surrogate practice to retain the barrable debt when the judgment is sought to be executed against the estate, if the statement quoted above

from the opinion in the *Kimball* v. *Scribner* case (174 App. Div. 845, *supra*) has not changed the ancient right of retention in surrogate practice.

The case at bar appears to belong in the second group, for the evidence is that the will was made in the second last week of the six-year limit; and was made under legal supervision; and the note was probably not brought to the attention of the skilled draftsman. Among the preferred legatees was the maker of the note in question. At the date of the will this debt was still collectible; and the will is silent as to it. Neither the testatrix nor the legatee-debtor did anything in regard to the note in question during the twelve years that elapsed between the due date of the note and the death of testatrix. It was stated as a fact upon the argument that the parties had made some arrangement at the date of the note whereby the maker purchased an automobile in his own name with the proceeds of the loan for which he gave the note; and that he thereafter drove the car around for her personal use and convenience; and that she declined to accept his offer to pay the note. As to the retention of the note by the payee till her death, it was held by the Surrogate in *Matter of Timerson* (39 Misc. 675) that where an intestate promised to forgive his heirs their debts to him, but never surrendered the notes representing the debts, the equitable right of retention was not altered by the lapse of time; and that the deduction of the debt should be made even though an action to recover the intestate portion could be barred. Mere retention of the instruments does not seem to be necessarily inconsistent with an intention to forgive the debt in making a legacy in simple form to the debtor.

On the whole it seems somewhat more probable than not that in making the legacy to the maker of the note this testatrix intended to forgive the legatee any indebtedness on this $377 note to herself. My conclusion is that the legatee is entitled to his share of the residuary estate without any deduction on account of the note.

On notice submit a decree in accord with this decision and enter.