In the Matter of the Accounting of GERTRUDE L. FELTES et al., as Executors of MATILDA SCHENK, Deceased.

Surrogate's Court, Erie County, May 16, 1955.

*John Dominick* for executors, petitioners.

*Clement Johnston* for Mildred M. Renault and another, objectants.

YEAGER, S. This matter is presented on an agreed statement of facts. Two questions are certified.

### QUESTION ONE

The facts which relate to the first question are as follows: Prior to 1937, deceased purchased with her own funds, debenture notes of the Phoenix Brewery Corporation in the names of her five daughters, including objectants. Deceased did not deliver the debenture notes to any of the daughters, but retained

them in her own possession. Checks for dividends were made payable to the daughters, but were delivered to Mrs. Schenk. With the checks in Mrs. Schenk's possession, they were indorsed by the daughters, including objectants, and deposited by Mrs. Schenk in her own bank account.

In 1937, the debenture notes were converted into capital stock of the Phoenix Brewery Corporation. Mrs. Schenk surrendered them to the brewery for substitution. The stock certificates (being those in question) were issued in the names of Mrs. Schenk's five daughters, and all of the certificates were delivered directly to Mrs. Schenk and none ever left her possession. Two of the daughters indorsed their certificates; the other certificates were not indorsed.

The certificates were always kept in Mrs. Schenk's safe-deposit box at the main office of the Marine Trust Company, to which no other person had access, except that in the last three months of Mrs. Schenk's life, because of the disability caused by her last illness, Mrs. Feltes and John H. Schenk, with the assistance of, and in company with, Mr. Zimmerman of the Marine Trust Company, visited the box twice, but with Mrs. Schenk's knowledge and consent. On Mrs. Schenk's death, the certificates were still in her safe-deposit box.

The dividend checks applicable to the stock held by three of the daughters were delivered by John Schenk to his mother, Mrs. Schenk. Two of the daughters, Mrs. Brown and Mrs. Wilson, lived out of town and their dividend checks were mailed to them. Mrs. Wilson indorsed the dividend checks she received and returned them to her mother. In the case of Mrs. Brown, the dividend check included dividends on stock owned personally by Mrs. Brown, and accordingly after Mrs. Schenk received the dividend check indorsed by Mrs. Brown, Mrs. Schenk then sent Mrs. Brown her personal check for the dividends on Mrs. Brown's personal stock.

Notices of stockholders meetings were sent by the company to the daughters, in whose names the stock was registered.

Specifically, the first question submitted by counsel is: "(1) Were the shares of Phoenix Brewery stock issued in the names of decedent's daughters ever given to the daughters? If so, were the gifts consummated on — (a) Date of issuance of stock to the daughters? (b) Or, on date of Mrs. Schenk's death? (c) Or, at what other time? (2) If the shares were never given to the daughters by completed gifts, are the shares to be now considered general assets of decedent's estate?"

There are three well-recognized factors which bear upon the question whether a valid gift has taken place. They have been set forth in many cases, including *Matter of Van Alstyne* (207 N. Y. 298), and others too numerous to mention: (1) Intention to make a gift; (2) Delivery of the chattel, whether actual or constructive; (3) Acceptance.

Did Mrs. Schenk intend to give the Phoenix Brewery stock to her daughters or did she not? Intention may be evidenced by words or actions, or both. If there were no intention to make a gift, it would be unnecessary to consider the other two factors, delivery and acceptance.

The fact that Mrs. Schenk had the stock transferred on the books of the corporation into the names of her daughters is some evidence of an intention to make them the legal owners of the stock; not conclusive, however. She arranged to hold, and did hold, the stock certificates herself. She arranged with her daughters to receive, and did receive, the dividends on the stock. She went further with respect to two daughters and procured from them their signatures or indorsements on the stock certificates themselves. These latter events are inconsistent with the first event. What is the explanation? Perhaps her object was to save income taxes and/or estate taxes; we do not know. An outright gift would accomplish such savings.

There was no physical delivery of the stock certificates, but that would not be indispensable if there were other events or declarations signifying a gift. The element of acceptance will be discussed later in the decision.

Let us consider the element of intention and delivery together. There has been considerable litigation, both within and without the State of New York on the subject of gifts of securities, and in some of them registration of the securities on the books of the corporation has occurred and is involved in the decision, while in others it has not occurred. The authorities are not in agreement as to what significance should be attached to the registration of stock on the books of a corporation as they consider the question of gifts of stock.

What have the New York courts held? In a case presented to Surrogate GRIFFITHS of Westchester County, the decedent's husband had purchased some securities and had them registered in his wife's name. There was no evidence as to possession and custody of the securities between the time of issuance and the date of her death. The Surrogate held that there was no valid gift and that the transaction did not pass title to the decedent. He said: " To establish a gift inter vivos there

must be evidence of intent on the part of the donor to make a gift, delivery to and acceptance by the donee. Beaver v. Beaver et al., 117 N. Y. 421, 428, 22 N. E. 940, 941, 6 L. R. A. 403, 15 Am. St. Rep. 531. While acceptance of a gift which is beneficial to the donee may be implied * * * delivery by the donor, either actual or constructive, is an essential factor in every transaction which takes effect as a completed gift. Here the record is not only barren of any proof that accountant intended to divest himself of possession of and dominion over said shares of stock, but the only evidence adduced negatives any intent to make a gift. Moreover, the mere surrender by an owner of stock certificates at the office of the company and the receipt of new certificates in the name of another, without proof of delivery to such other, would not accomplish a valid executed gift. Matter of Crawford et al., 113 N. Y. 560, 21 N. E. 692, 5 L. R. A. 71. Here there is no proof of any delivery of the certificates of stock, actual or constructive * * * to decedent.'' (*Matter of Chevalier,* 90 N. Y. S. 2d 788, 790–791.)

In another case, the decedent was the individual owner of some corporate stock. Then the company was reorganized and the decedent had her stock certificate reissued in the joint names of herself and her cousin. Later the certificate was cancelled and in its place seventeen shares of stock were issued. The Surrogate held that there was no valid gift because of an utter lack of proof of either an actual or constructive delivery of the stock or of its acceptance by the donee. (*Matter of Muckle,* 35 N. Y. S. 2d 391.)

A relevant problem was presented in the case of *Berson* v. *Blue Ridge Coal Corp.* (197 Misc. 475, 476–477): '' As applied to gifts of stocks, the general rule of law is that delivery must be made either by a transfer of the stock certificate, with or without endorsement, or by deed or other instrument of gift. Indeed, under the majority rule, a formal instrument of gift is required; while under the minority rule, any instrument of gift will suffice, however informal it may be. (Brown on Personal Property, §§ 46, 60; see 63 A. L. R. 540, 552 and 99 A. L. R. 1078–1086, where cases are collated.) While the Court of Appeals has not passed upon the question, the minority rule has been adopted by the Appellate Division of this Department by a closely divided court, on the ground that there is no compelling necessity of delivery when a parol or verbal gift is established by the execution and delivery of a written instrument or memorandum of gift. (*Matter of Cohn* [187 App. Div. 392], *supra, Hawkins* v. *Union Trust Co.,* 187 App. Div.

472; *Matter of Goodwin,* 114 Misc. 39, 44; *Matter of Valentine,* 122 Misc. 486, 488–489; *Matter of Brown,* 130 Misc. 865, 871, mod. on other grounds 225 App. Div. 759, mod. 252 N. Y. 366; *Matter of Seigle,* 176 Misc. 15, mod. on other grounds, 262 App. Div. 879, 880.) The rule requiring delivery is founded on public policy, to prevent mistakes and imposition. (*Matter of Van Alstyne,* 207 N. Y. 298, 308; *Matter of Cohn, supra*); it is particularly applicable to parol or verbal gifts. (*Matter of Brown, supra,* 871). As has been pointed out, the *Cohn* decision (*supra*) has ameliorated the rigor of the general rule ' only to the extent that an instrument containing words of gift has been held sufficient though not in form of a deed or assignment ' *Matter of Merz,* 45 F. 2d 558, 561). ' Where the gift is evidenced by a writing, the ordinary rules as to delivery are somewhat relaxed. Otherwise, the rule as to delivery is strict ' (*Matter of Brown, supra,* p. 871). No case has been called to my attention, nor have I been able to find any, where the general rule has been further relaxed. I do not believe it should be. Indeed, it would seem rather presumptuous to do so in the absence of an authoritative ruling on the subject in view of the close decision in the *Cohn* case (*supra*), and especially since the effect of any further modification of the rule might be to overrule the long-established doctrine of *Irons* v. *Smallpiece* (*supra*).''

In *Matter of Hayes* (153 Misc. 233), the question arose whether or not a gift of stock had taken place. The decedent organized a corporation causing his mother and sister to be named with him as incorporators. Certificates were issued in the names of each but remained in the possession of the decedent until his death. The court held that delivery was essential to constitute a gift, and that the writing out of the certificates in the manner described was not enough to accomplish a gift of the shares as against the decedent or his estate.

Some of the out-of-State cases which have considered this question are:

In *Roberts' Appeal* (85 Pa. 84), it was held that transfer of shares on the books of a corporation is equivalent to a delivery; that retention of stock certificates can not undo or qualify the decisive ownership with which the '' donor '' has invested the '' donee '' by the transfer on the company's books.

In *Hardymon* v. *Glenn* (56 F. Supp. 269), it was held that the transfer of certificates on books of a corporation into names of new owners constituted delivery and completed the gift of the stock certificates.

On the other hand, in *Weisenberger* v. *Corcoran* (275 Ky. 322), it was held that the registration of building and loan stock in a certain name does not conclusively establish that person as owner of the stock. And in *Figuers* v. *Sherrell* (181 Tenn. 87), it was held that a gift *inter vivos* was not completed by transfer on the books of the corporation and issuance of a new certificate in the donee's name, where the delivery was to donor who kept possession until his death, in the absence of other statements or acts by him tending to show a gift. Both legal and equitable title to shares of stock follows the lawful possession of certificate. The court commented that a transfer of present interest is necessary to completion of a gift *inter vivos* of such shares.

In *Hart* v. *Hart* (272 Ky. 488), a certain lady owned some stock in a building association, — the maximum permitted for one person. Accordingly, she bought some additional stock in her nephew's name, without his knowledge, and had it issued in his name. She retained possession of the certificates and collected the dividends regularly. The court held that there was no gift *inter vivos,* since intent to make a gift was wholly lacking.

In *Weil* v. *Collector of Internal Revenue* (82 F. 2d 561), it was alleged that a man gave some stock to his children, but he retained control and custody of it, apparently for the purpose of exercising dominion over the stock in the event of sale of it. The court held that such retention by the donor was inconsistent with a present absolute gift, notwithstanding the transfer of stock on the company's books.

It has been held that a gift of stock may take place without transfer on the books of the corporation. (*Bolles* v. *Trust Co.,* 132 Ohio St. 21.)

Registration on the books of the corporation in the name of an alleged donee may not be as significant as it seems at first blush. Perhaps such registration is only for the protection of the corporation, as has been stated, or implied in various opinions, leaving the fundamental question of gift dependent upon other facts and circumstances.

I have observed that it is possible for legal ownership of stock to be in one person and the right to receive dividends to be in another person. (*Matter of Brenner,* 169 Misc. 412.)

Without repeating the particulars with respect to the stock and the dividends in this case, it seems clear that Mrs. Schenk did not intend to give the stock to her daughters, and further that no delivery of the stock was made. I hold that the registration of the stock in the daughters' names on the books of the corporation was not enough to give them the legal title to the

stock. So the first two essential elements of a gift, intention and delivery, are lacking and it thus becomes unnecessary to make a finding with respect to the third element of acceptance, other than to comment that the stipulated facts do not clearly show acceptance.

I also hold that there was no gift *causa mortis*. At the time of the transaction, Mrs. Schenk was not ill, so far as disclosed by the stipulation of facts. In fact, she lived approximately eleven years afterward. It is elementary that, to prove a gift *causa mortis*, it must be shown that the alleged donor was ill, feared or expected impending death, that death ensued without recovery from said illness, and that there was a delivery. Revocation of such a gift may be made at any time before death. These principles have been enunciated so frequently that it is unnecessary to cite authorities.

Consequently, I hold that there was no gift *inter vivos* or *causa mortis* of the stock from Mrs. Schenk to her daughters, and that the shares in question are to be now considered general assets of decedent's estate.

### QUESTION TWO

The facts which relate to the second question, which has been certified, are as follows: There was a $5,000 promissory note dated May 24, 1937, from John H. Schenk to his mother, Matilda Schenk, reading as follows: " $5000.00 Buffalo, N. Y. May 24, 1937 On Demand after date I promise to pay to the order of MATILDA SCHENK Five thousand 00/100 Dollars Payable at Value received /s/ John H. Schenk ".

In the executors' account in Schedule B-1 " Deductions from Estate Assets," page 52, the executors seek to write off the above-described note, claiming that it is barred by the Statute of Limitations. The objectants object to having this note written off and demand that said $5,000 be charged to John H. Schenk as an advancement.

In the stipulation of facts, the following item also appears: " In May of 1937, John H. Schenk, one of the Executors and who is here in Court borrowed from his mother five thousand dollars, which he used as a contribution to capital out there at the Phoenix Brewery and executed a promissory note: ' On demand after date I promise to pay to the order of Matilda Schenk, five thousand dollars, value received ', and that promissory note was found in his mother's effects at the time of her death. Being a demand promissory note the Executor, but in

his personal capacity, takes the position that this five thousand dollars should not be charged against him in the same manner as the donations or gifts made by the mother to the children and to him while she was still alive, for the reason that this wasn't a gift at all. Instead, it was a business transaction which his mother entered into with him as evidenced by the promissory note and that for at least six years after this promissory note was made it was a valid, negotiable instrument and could by her have been negotiated, it could have been hypothecated with the bank, discounted. Therefore, as far as he was concerned it was not a gift and consequently should not be charged against him as a donation made to him in her lifetime. That is the subject matter of the second Objection. Mr. Johnston objects that it ought to be charged to Mr. Schenk. There again I think perhaps the facts are quite susceptible of agreement while the legal conclusion is not.''

Specifically, the second question submitted by counsel is: '' On the facts stipulated above, and under the provisions of decedent's last Will and Testament, should the promissory note be charged against the distributive share of John H. Schenk?''

It is not disputed that the time period for the Statute of Limitations to run has expired, but that does not resolve the question. Mr. Schenk takes the position that it was a business transaction with his mother, that the Statute of Limitations has run against it, and that it was not a gift to him.

Was it a business transaction? The giving of a promissory note ordinarily connotes a business transaction, and yet it is clear from the will itself that Mrs. Schenk did not put this transaction in the same category in which she put the transaction with her son-in-law. In the latter instance she took collateral from her son-in-law, and in her will spelled out in detail that, if the amount owing on such loan should be greater than her daughter Florence's share in her estate, the executors should require the loan '' to be paid down to a sum not greater than the amount which she may be entitled to receive on distribution ''. However, if the amount owing on the loan did not exceed her daughter Florence's share in her estate, Florence was to '' take over as part of her share, such amount as may remain unpaid on the loan * * * and the stock collateral * * * shall be turned over to her ''. Added to this language of the will is the fact that Mrs. Schenk did not collect interest on the note nor endeavor to enforce it in any manner.

The objectants, as a point of law, argue that even though the Statute of Limitations has run, the debt itself remains, and

only the remedy of enforcement is lost; and that the debt of John Schenk should be set off against his share of the estate.

The objectants call attention to the old rule of English Chancery, under which, regardless of the fact that the Statute of Limitations had run against a debt, a person receiving something from an estate would have his debt to the estate offset against the amount due him.

The executors point out that this was the rule in New York State until 1916, but it was changed by the decision in *Kimball* v. *Scribner* (174 App. Div. 845). In other words, and as applied to the Schenk case, the executors take the position that they cannot deduct $5,000 from John Schenk's share in his mother's estate.

*Kimball* v. *Scribner* (*supra*), has been distinguished and explained in a number of subsequent cases, and has been followed in some of them. Apparently the Court of Appeals has not yet passed on the precise question. As the Surrogate of Chenango County remarked in *Matter of Tarbell* (99 N. Y. S. 2d 902, 907): '' The decisions bearing upon the enforcement of this outlawed note as an offset to a legacy made by the holder to the maker may be termed ' fluid ' ''. After pointing out that *Kimball* v. *Scribner* (*supra*), seemed to reverse the earlier holdings, he added: '' but the later cases have still applied similar provisions such as a discharge in bankruptcy and an insolvent estate as an equitable set-off to a legacy. *Matter of Flint's Estate,* 120 Misc. 230, 198 N. Y. S. 190, affirmed 206 App. Div. 778, 200 N. Y. S. 922; *Matter of Sawin's Estate,* 173 Misc. 428, 431, 19 N. Y. S. 2d 465, 468; *Matter of Sherman's Will,* 187 Misc. 943, 68 N. Y. S. 2d 851.''

The Surrogate of Monroe County in *Matter of Hart* (185 Misc. 791), had occasion to consider a transaction involving a note from a beneficiary under the will to the decedent, against which the Statute of Limitations had run. The will was silent as to the note, and also as to any deductions to be made on account of any indebtedness of any legatee to the testatrix. He said, at page 794: '' The intention of testator is controlling in any case, if it can be found; and the matter being often one of fact, the variance in the cases may be due to differences in facts.'' Because of the absence of evidence that the testatrix wanted the amount of the note deducted from the beneficiary's share, Surrogate FEELY held that there should be no deduction.

I believe that it is undoubtedly true that the decisions subsequent to *Kimball* v. *Scribner* (*supra*), differ from one another because the intention of the testator is evidenced in different

ways. Sometimes the will specifically directs that a particular debt, or debts in general, shall be deducted from a beneficiary's share. Sometimes, although the will contains no such direction, the intention for or against deduction can be inferred from other words in the will, or external circumstances. Finally, there are instances where no evidence is available as to the testator's intention.

The Fourth Department of the Appellate Division has expressed its opinion in *Matter of Riley* (281 App. Div. 612). It reasoned and held that, certain cases to the contrary notwithstanding, there was no occasion to have one rule for a law court and a different rule for the Surrogate's Court. Choice of forum should not make possible a recovery in one court not available in another. *Kimball* v. *Scribner* (174 App. Div. 845, *supra*) was an action in Supreme Court, and involved a will which left to a " beloved brother * * * absolutely, the sum of $20,000." In the *Riley* case (*supra*), the Fourth Department ruled against the setoff principle on the ground that there was nothing in the will to support an equitable setoff. Neither in the *Riley* case (*supra*), nor in any other to which attention has been called or research has produced, has it been said that a setoff of a debt against a beneficiary's share in the estate may not occur, if the testator has shown an intention that it shall occur. While Surrogate GRIFFITHS of Westchester County in *Matter of Patterson* (73 N. Y. S. 2d 433), held that notes from testator's daughters should not be setoff against their trust income, it was because he found cogent evidence that it was not the testator's intention to make any deduction. On the subject of testator's intention being the deciding factor, he had this to say: " In view of the conclusion hereinafter reached, it is unnecessary to consider whether the claim is barred by the Statute. Even though the debt was incapable of enforcement, the testator was free to give or withhold as he saw fit, and to dispose of his property free from, or subject to, any indebtedness owing to him by any legatee. Matter of Haase's Will, 174 Misc. 42, 20 N. Y. S. 2d 19, Matter of Cordier's Estate, 168 Misc. 577, 6 N. Y. S. 2d 270 is not in conflict with the decision in *Kimball* v. *Scribner, supra,* but is authority for the holding that the direction in the will for the deduction of an indebtedness from the share given a legatee may extend to a debt owing by such legatee notwithstanding that the Statute of Limitations was a bar to the enforcement of the indebtedness at the death of decedent." (P. 438.)

In *Matter of Sawin* (173 Misc. 428), Surrogate MILLARD of Westchester County held that a son's discharge in bankruptcy did not defeat the executor's right of setoff against the son's beneficial share in the estate. He was a judgment debtor to the estate, and after probate of the will he was adjudicated a bankrupt and received a discharge in bankruptcy. The Surrogate stated: "'The right of retainer and lien is equitable in its nature, is independent of statute and is distinct from the technical right by setoff in actions at law.' (*Matter of Flint, supra,* 231.) Consequently, the decision in the *Kimball* v. *Scribner* \* \* \* is not applicable." (P. 432.)

Surrogate FOLEY in *Matter of Cordier,* (168 Misc. 577), recognized *Kimball* v. *Scribner* (*supra*), as establishing the present law of New York State on this question, but he directed a deduction from testator's son's one-fourth share of the residue of the estate of the amount of the son's note which had become outlawed by the Statute of Limitations. He reached this result because the testator's will directed that "the amount of any indebtedness due me from either of my children shall be deducted" from the respective shares therein designated.

Pursuant to the *Riley case* (*supra*), which is binding upon me, and where the will did not contain any provision throwing light on the testator's intention, let us search to find the intention of Matilda Schenk with respect to the $5,000 owed by her son, John Schenk, who is also an executor of her will. The note had been in existence about three and a half years before Mrs. Schenk made her will.

Paragraph "Sixth" of Mrs. Schenk's will reads as follows: "Since the death of my husband, John C. Schenk, in the year 1932, I have received the income from his estate, in accordance with the provisions of his Will. I have shared this income with my children, intending to give each of them an equal amount but, owing to circumstances, on occasions, where needed, I have given some of the children more than the others. I direct my executors, in making division of my estate, so far as possible to even these inequalities by charging against the share of any one who has received more than the others such additional amount as an advance against his or her share in my estate, *so that the amounts which my children have had from me in my lifetime, together with the amount which they receive on distribution of my estate, shall be as nearly equal as possible each with the others.* (Underlining supplied.) My daughter, Florence L. Danahy, shall take over, as part of her share, such amount as may remain unpaid of the loan which I made to her husband,

Raymond G. Danahy, and the stock collateral, which I hold as security for the loan, shall be turned over to her; if the amount owing on this loan is greater than the share of my daughter, Florence L. Danahy, in my estate, my executors shall require the loan to be paid down to a sum not greater than the amount which she may be entitled to receive on distribution.''

It seems to me that Mrs. Schnek has adequately demonstrated that whatever inequalities may have taken place in gifts to her children during her lifetime, she wanted those inequalities corrected and adjusted so that the amounts which they had received in her lifetime, together with the amounts which they would receive on distribution of her estate, should be as nearly equal as possible. There is only one way to achieve the objective of that intention, and accordingly I hold that executors should charge the said promissory note against John H. Schenk's distributive share in his mother's estate.

The answer to the second question which counsel has certified is therefore: the said promissory note of John H. Schenk to Matilda Schenk should be charged against his distributive share.

A decree may be submitted in accordance with this decision.